Honorable Judge Mary Alice Theiler

——— FILED  ——— ENTERED
——— LODGED  ——— RECEIVED

JUN 15 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ——————————— DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,        )        NO. CR11- 0199MAT
                                 )
              Plaintiff,         )
                                 )
        v.                       )        PLEA AGREEMENT
                                 )
DARIGOLD, INC.                   )
                                 )
              Defendant.         )        [Misdemeanor]
_____)

        The United States of America, by and through Jenny A. Durkan, United States Attorney
for the Western District of Washington, James D. Oesterle, Assistant United States Attorney for
said District, Defendant DARIGOLD, INC., and its attorney, Robert G. Chadwell, enter into the
following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

        1.      The Charges.  Defendant, having been advised of the right to have this matter tried
before a jury, agrees to waive that right and enter pleas of guilty to (1) negligently discharging a
pollutant through a point source into a water of the United States in contrary to the terms of a
National Pollutant Discharge Elimination System permit, in violation of Title 33, United States
Code, Sections 1311(a) and 1319(c)(1)(A), and (2) unlawfully taking a threatened species contrary
to the Endangered Species Act, in violation of Title 16, United States Code, Sections
1538(a)(1)(G) and 1540(b)(1).

        2.      Elements of the Offenses.  To establish liability for the charged offense of
negligently discharging a pollutant as charged in Count 1 of the Information, the United States
must prove that the Defendant, through the acts of its employees, agents and servants:

        a.      negligently discharged a pollutant;

PLEA AGREEMENT - 1
DARIGOLD, INC.

1      b.      through a point source;

2      c.      into a water of the United States; and

3      d.      without or in violation of a permit.

4      To establish liability for the charged offense of unlawfully taking a threatened species as

5  charged in Count 2 of the Information, the United States must prove that the Defendant, through

6  the acts of its employees, agents, and servants:

7      a.      knowingly and unlawfully, that is without permission from the United States

8              Department of the Interior,

9      b.      took, or caused to be taken, a threatened species of fish.

10     Defendant acknowledges that under established principles of corporate liability and

11  respondeat superior, as these principles apply in the instant case, corporate defendants are liable

12  for the actions of their employees, agents, and servants under circumstances where the employees,

13  agents, and servants are acting within the scope of their agency and their actions are intended, at

14  least in part, to benefit the corporate defendant. *See, e.g. United States v. Beusch*, 596 F.2d 871

15  (9th Cir. 1979); *United States v. Powder Puff Co.*, 163 F.2d 1008 (7th Cir. 1947); *New York*

16  *Central and Hudson River R.R. v. United States*, 212 U.S. 481, 495 (1909).

17     3.    The Penalties. Defendant understands that the statutory penalties for the offense of

18  negligently discharging pollutants through a point source to a water of the United States as

19  charged in Count 1 of the Information are as follows: a fine of up to Twenty Five Thousand

20  Dollars ($25,000.00), a period of probation of up to five (5) years, and a One Hundred Twenty

21  Five Dollar ($125.00) special assessment. Defendant agrees that the special assessment shall be

22  paid at or before the time of sentencing.

23     Defendant understands that the statutory penalties for the offense of unlawfully taking a

24  threatened species in violation of the Endangered Species Act as charged in Count 2 of the

25  Information are as follows: a fine of up to Twenty Five Thousand Dollars ($25,000.00), a period

26  of probation of up to five (5) years, and a Fifty Dollar ($50.00) special assessment. Defendant

27  agrees that the special assessment shall be paid at or before the time of sentencing.

28     Defendant agrees that any monetary penalty the Court imposes, including the special

PLEA AGREEMENT - 2
DARIGOLD, INC.

1  assessment, fine, costs, community service payment or restitution, is due and payable

2  immediately, and further agrees to submit a completed Financial Statement of Debtor form as

3  requested by the United States Attorney's Office if all required payments are not made

4  immediately.

5      4.    <u>Rights Waived by Pleading Guilty</u>.   Defendant understands that by pleading guilty,

6  Defendant knowingly and voluntarily waives the following rights:

7          a.    The right to plead not guilty and to persist in a plea of not guilty;

8          b.    The right to a speedy and public trial before a jury of Defendant's peers;

9          c.    The right to the effective assistance of counsel at trial;

10         d.    The right to be presumed innocent until guilt has been established beyond a

11     reasonable doubt at trial;

12         e.    The right to confront and cross-examine witnesses against Defendant at

13     trial;

14         f.    The right to compel or subpoena witnesses to appear on Defendant's behalf

15     at trial;

16         g.    The right to testify or to remain silent at trial, at which trial such silence

17     could not be used against Defendant; and

18         h.    The right to appeal a finding of guilt or any pretrial rulings.

19     5.    <u>Applicability of United States Sentencing Guidelines</u>.   Defendant understands and

20 acknowledges that the United States Sentencing Guidelines promulgated by the United States

21 Sentencing Commission are applicable to the sentencing in this case for advisory purposes, except

22 that pursuant to USSG §§ 8C2.1, Chapter 8 of the United States Sentencing Guidelines does not

23 apply to determine the appropriate fine in this case.  Defendant understands and acknowledges

24 that, at sentencing, the Court must consider the factors set forth in  Title 18, United States Code,

25 Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and

26 characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the

27 offense, to promote respect for the law, and to provide just punishment for the offense; (4) the

28 need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the

PLEA AGREEMENT - 3
DARIGOLD, INC.

1    sentence to protect the public from further crimes of the defendant; (6) the need to provide the

2    defendant with educational and vocational training, medical care, or other correctional treatment

3    in the most effective manner; (7) the kinds of sentences available; (8) the need to provide

4    restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants

5    involved in similar conduct who have similar records. Accordingly, Defendant understands and

6    acknowledges that:

7            a.      The Court will determine Defendant's applicable Sentencing Guidelines

8    range at the time of sentencing;

9            b.      After consideration of the Sentencing Guidelines and the factors in

10   18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum

11   term authorized by law;

12           c.      The Court is not bound by any recommendation regarding the sentence to

13   be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the

14   parties or the United States Probation Department, or by any stipulations or agreements between

15   the parties in this Plea Agreement; and

16           d.      Defendant may not withdraw a guilty plea solely because of the sentence

17   imposed by the Court.

18        6.    Sentencing Agreement. Pursuant to Rule 11(c)(1)(B) of the Federal Rules of

19   Criminal Procedure, the parties agree to jointly recommend at the time of sentencing that the

20   Court impose the following sentence:

21           a.      Fine. Defendant shall pay a criminal fine in the amount of Ten Thousand

22   Dollars ($10,000) which does not include an amount to be paid in the form of community service

23   as described below.

24           b.      Mandatory Special Assessment. Defendant shall pay a special assessment

25   of One Hundred Twenty Five Dollars ($125) as to Count 1 and Fifty Dollars ($50) as to Count 2.

26           c.      Payment of Fine, Assessments, and Community Service Defendant agrees

27   that all monetary penalties imposed by the Court, including the fines, community service, and

28   special assessments, shall be paid on the day of sentencing. Payments of the criminal fine and

PLEA AGREEMENT - 4
DARIGOLD, INC.

1    special assessments shall be made in the form of a check(s) payable to "United States District

2    Court Clerk." Payment of the community service amount set forth in subparagraph f, shall be

3    made in the form of a check payable to the "National Fish and Wildlife Foundation re: Puget

4    Sound Marine Conservation Fund."

5    　　　　d.　　Probation. Defendant will be placed on organizational probation for a

6    period of three (3) years pursuant to USSG §§ 8D1.1 and 8D1.2. The parties agree that the

7    Defendant can petition the Probation Office no earlier than two years following entry of the

8    judgment to terminate the probationary term provided the environmental compliance plan outlined

9    below has been fully implemented as verified by a third party consultant. The terms of probation

10   shall include the following specific provisions, in addition to the Court's standard conditions:

11   　　　　(1)　　No Further Violations. Defendant agrees not to commit any further

12   　　　　　　violations of federal, state or local environmental criminal law, and shall conduct

13   　　　　　　all its operations in accordance with federal, state or local environmental statutes

14   　　　　　　and regulations.

15   　　　　(2)　　Environmental Compliance Plan. Consistent with the sentencing policies set

16   　　　　　　forth in USSG § 8D1.4, Defendant, through its authorized representatives, agrees

17   　　　　　　to develop, adopt, implement and fund an Environmental Compliance Plan (ECP)

18   　　　　　　during the probationary period. Defendant agrees that the ECP will comply with

19   　　　　　　the special conditions of probation outlined below, and that the Standards and

20   　　　　　　Requirements for the ECP, agreed to by the United States, will be filed with the

21   　　　　　　Court as an attachment to this Agreement on or before the date of sentencing.

22   　　　　　　Defendant understands and agrees that if the Standards and Requirements for the

23   　　　　　　ECP are not agreed upon by the date of sentencing, the United States reserves the

24   　　　　　　right to withdraw from this Agreement and pursue all charges for which there is

25   　　　　　　probable cause. If Defendant changes its name, re-organizes, merges, or otherwise

26   　　　　　　ceases operations in its current form, the person or entity acquiring the assets or

27   　　　　　　taking over the operation of the Defendant shall take over the responsibility to

28   　　　　　　develop, implement, fund and maintain the ECP, provided that the person or entity

PLEA AGREEMENT - 5
DARIGOLD, INC.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

acquiring the assets or taking over the operations are wholly or partially owned or controlled, directly or indirectly, by Darigold, Inc., their parent companies, affiliates, successors in interest or assigns.

A.      The ECP will establish that all environmental risks associated with Darigold, Inc.'s operations at each of its processing plants have been identified; such risks are being appropriately managed and potential risks are being avoided; all federal, state and local laws, regulations, and environmental permit requirements are being adhered to; appropriate policies, programs and procedures are in place; organizational responsibilities are clearly defined, understood and implemented; environmental quality control assurance and verification systems are in place, as determined by appropriate self-policing and third-party audits; company operations, including contractor operations and on-site service provider operations, do not present unreasonable risks to the environment. Defendant shall ensure that the ECP is diligently enforced by their officers, managers and employees.

B.      Defendant shall be responsible for all costs associated with the development, implementation, maintenance and monitoring of the ECP.

C.      During the period of probation, an independent auditor shall monitor and ensure Defendant's compliance with the Plea Agreement and probation conditions and the development, implementation and maintenance of the ECP in accord with the Standards and Requirements filed with the Court.  Defendant will assume all costs and expenses associated with the employment and expenses of the auditor.  Defendant agrees to provide the auditor with unrestricted access to all processing plants listed in the ECP, including all employees, documents and computers, relevant to monitoring of the vessels listed in the focused ECP, and to facilitate access to contractors and contractor employees in respect

PLEA AGREEMENT - 6
DARIGOLD, INC.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  thereto.  All reports and draft reports issued by the auditor will be delivered

2  to the Probation Office, United States Attorney's Office and the U.S.

3  Environmental Protection Agency/Criminal Investigation Division-Seattle

4  Office prior to or simultaneously with delivery to Defendant.

5        D.     The government acknowledges that the Defendant presently has an

6  environmental management program.  The government agrees to consider

7  the attributes of this program in evaluating the need to provide

8  supplemental measures to ensure the objectives outlined in sub-section A

9  above are adequately addressed.

10        e.     Access.  Defendant agrees that during the period of probation, and at all

11  reasonable times and with as reasonable of a prior notice by the United States as practicable, they

12  will provide the United States with full access to processing plants as well as, all facilities,

13  employees, and records relevant to monitoring compliance with the terms and conditions of the

14  ECP.  The United States will make all reasonable efforts to ensure that any visits pursuant to this

15  agreement will not delay or interfere with operations at the processing plant.

16        f.     Community Service.  Defendant shall make an organizational community

17  service payment in the amount of Sixty Thousand dollars ($60,000) pursuant to §8B1.3 of the

18  Federal Sentencing Guidelines and in furtherance of satisfying the sentencing principles provided

19  for under 18 U.S.C. § 3553(a).  Defendant and the government agree that the organizational

20  community service payment shall be made to the National Fish and Wildlife Foundation.  The

21  National Fish and Wildlife Foundation (NFWF) is a charitable and nonprofit corporation

22  established pursuant to 16 U.S.C. §§ 3701-3709.  Its purposes include the acceptance and

23  administration of "private gifts of property for the benefit of, or in connection with, the activities

24  and services of the United States Fish and Wildlife Service," and the performance of "such other

25  activities as will further the conservation and management of the fish, wildlife, and plant

26  resources of the United States, and its territories and possessions for present and future

27  generations of Americans."  Id. § 3701(b)(1), (2).

28        The community service payment shall be directed to the Puget Sound Marine

PLEA AGREEMENT - 7
DARIGOLD, INC.

1  Conservation Fund, which is administered by the NFWF.  The Fund was established to finance

2  the following types of projects within the Western District of Washington: (1) habitat

3  conservation, protection, restoration and management projects to benefit fish and wildlife

4  resources and the habitats on which they depend; (2) landowner outreach and incentive programs

5  for restoration and management of natural resources;  (3) public use and natural/cultural projects

6  that benefit the Fish and Wildlife Refuge System and other federal and state refuges, reserves, and

7  specially protected natural areas; and (4) collaborative projects from local communities seeking

8  environmentally and economically sustainable solutions to natural resources problems.  NFWF

9  will apply the community service payment to projects directly impacting the Issaquah Creek

10  watershed.

11       Defendant, through its authorized representatives, will not characterize, publicize or refer

12  to the community service payment as a voluntary donation or contribution.

13           g.    Public Apology.  The parties agree that the Defendant will publicly

14  apologize for its criminal conduct by purchasing a one-quarter page advertisement in the Issaquah

15  Press.  The published apology must be pre-approved by the United States Attorney's Office in

16  consultation with the U. S. EPA/Criminal Investigation Division and the NOAA/Office of Law

17  Enforcement.  The published apology will include the Defendant's name, the nature of the offense

18  and any harm caused by the offense, the fact that the Defendant pled guilty, the sanctions

19  imposed, and the apology itself.  The public apology will be published no later than one (1) month

20  following entry of judgment.

21       7.    Application of the Agreement.  This Agreement shall bind Defendant and its

22  subsidiaries and affiliates, including all subsidiaries and affiliates that technically manage and/or

23  operate processing plants, and all successors in interest, if applicable, and all successors and

24  assigns.  Defendant shall provide immediate notice to the United States Attorney's Offices, and

25  the U.S. Environmental Protection Agency/Criminal Investigation Division-Seattle Office of any

26  of the following: any corporate name changes; any purchase or sale of vessels; any purchase, sale

27  or reorganization or divestiture; or any other change impacting upon or affecting this Plea

28  Agreement or with the ECP.  No change in name, change in corporate or individual control,

PLEA AGREEMENT - 8
DARIGOLD, INC.

1   business reorganization, change in ownership, merger, change of legal status, sale or purchase of

2   assets, or similar action shall alter Defendant's responsibilities under this Agreement. Defendant

3   understands and agrees that it shall not engage in any action to seek to avoid the obligations and

4   conditions set forth in this Agreement.  This Agreement does not apply to any processing plant

5   owned by the Defendant which is subsequently sold in an arms length transaction to an unrelated

6   purchaser.

7        8.     <u>Statement of Facts</u>.  The parties agree on the following facts.  Defendant admits

8   that, by and through the actions of its employees, agents and servants, they are guilty of the

9   charged offenses.

10        Darigold, Inc. is a Washington corporation engaged in the business of producing dairy

11   products.  Darigold owns and operates eleven processing plants that make and distribute fluid

12   milk, butter, cottage cheese, yogurt, and other cultured dairy products under the Darigold brand

13   and private labels.  One of the eleven processing plants is located in Issaquah, Washington.

14        The Clean Water Act, 33 U.S.C. § 1251, et seq., is the Nation's comprehensive water

15   pollution control statute.  The purpose of the Clean Water Act is "to restore and maintain the

16   chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  It was

17   enacted to prevent, reduce, and eliminate water pollution in the United States and to conserve the

18   waters of the United States for the protection and propagation of fish and aquatic life and wildlife,

19   recreational purposes, and use for public drinking water, agricultural, and industrial use.  33

20   U.S.C. § 1252(a).  To achieve these goals, the Clean Water Act, among other things, prohibits

21   discharges of pollutants into waters of the United States, except in compliance with a permit

22   issued pursuant to the Clean Water Act under the National Pollution Discharge Elimination

23   System (NPDES) by the United States Environmental Protection Agency (EPA) or an authorized

24   state. 33 U.S.C. §§ 1311(a) and 1342.  The State of Washington Department of Ecology has been

25   authorized to administer elements of the NPDES program.

26        The Washington Department of Ecology issued NPDES Permit number WA-003203-4 to

27   Darigold's Issaquah processing plant on December 29, 2004.  The permit was administratively

28   extended on December 22, 2009.  It places limits and conditions on the wastewater discharges

PLEA AGREEMENT - 9
DARIGOLD, INC.

1    from the Issaquah plant to the East Fork of Issaquah Creek.  For purposes of this case, the permit

2    prohibits discharges of ammonia.  Ammonia is toxic to aquatic life.

3         On October 7, 2009, employees with the Washington Department of Fish and Wildlife

4    were conducting a fish survey along the East Fork of Issaquah Creek in the immediate vicinity of

5    the Issaquah plant.  Members of the survey team detected a strong ammonia odor and observed

6    dead and dying fish downstream from the Issaquah plant's stormwater outfall.  Included amongst

7    the dead and dying fish were several adult Chinook salmon.  Puget Sound Chinook salmon

8    (*Oncorhynchus tshawytscha*) were listed as a threatened species under the Endangered Species

9    Act in 1999.

10        State and federal investigators subsequently determined that the release of an ammonia

11   solution into the East Fork of Issaquah Creek occurred on October 7, 2009 during repair of the

12   plant's refrigeration system.  Darigold employees tasked with conducting repair operations used

13   an eductor to remove an ammonia solution from part of the refrigeration system to facilitate

14   changing fittings on a check valve.  The ammonia solution was discharged onto an adjacent roof

15   where it was allowed to run into a storm drain.  The employees took no steps to contain the

16   discharge or otherwise direct it away from the roof drains.  The storm drain, a point source under

17   the Clean Water Act, discharged directly into the East Fork of Issaquah Creek, a water of the

18   United States.  The Puget Sound Chinook salmon observed by the survey team died after

19   contacting the ammonia solution as it entered the Creek.

20        9.    Non-Prosecution of Additional Offenses.  As part of this Plea Agreement, the

21   United States Attorney's Office for the Western District of Washington agrees not to prosecute

22   Defendant for any additional offenses known to it as of the time of this Agreement that are based

23   upon evidence in its possession at this time, or that arise out of the conduct giving rise to this

24   investigation.  In this regard, Defendant recognizes the United States has agreed not to prosecute

25   all of the criminal charges the evidence establishes were committed by Defendant solely because

26   of the promises made by Defendant in this Agreement.  Defendant agrees, however, that for

27   purposes of preparing the Presentence Report (if such Report is ordered), the United States

28   Attorney's Office will provide the United States Probation Office with evidence of all conduct

PLEA AGREEMENT - 10
DARIGOLD, INC.

1  committed by Defendant.

2        Nothing contained in this Agreement is meant to limit the rights and authority of the

3  United States to take further civil or administrative action against the Defendant, including but not

4  limited to, any listing and debarment proceedings to restrict rights and opportunities of the

5  Defendant to contract with or receive assistance, loans, and benefits from United States agencies.

6  This Agreement applies to crimes committed by the Defendant and has no effect on any

7  proceeding against any entity or individual not expressly mentioned herein, including the actual or

8  potential liability of any individuals.

9        10.   <u>Corporate Authorization</u>.  Defendant represents that it is authorized to enter into

10  this Agreement and to bind itself and any subsidiaries to the terms of this Agreement.  On or

11  before the date of entry and filing of the Plea Agreement, Defendant shall provide to the United

12  States Attorney's Office and the Court a written statement, under corporate seal and properly

13  authenticated under the laws of the State of Washington, certifying that Defendant corporation is

14  authorized to enter into and comply with all the provisions of this Plea Agreement; that a

15  representative of Darigold, Inc. has been authorized by Defendant to enter a guilty plea and attend

16  the sentencing hearing on behalf of Defendant; and that Defendant and its authorized

17  representative have observed all required corporate formalities for such authorizations.

18        11.   <u>Breach of the Agreement</u>.  If the government determines that Defendant has failed

19  to comply with any provision of this Agreement, or has committed any crime within the

20  jurisdiction of the United States during the pendency of this Agreement, the government may, at

21  its sole option, be released from its commitments under this Agreement in their entirety by

22  notifying Defendant, through counsel or otherwise, in writing.  The government may also pursue

23  all remedies available under the law, irrespective of whether it elects to be released from its

24  commitments under this Agreement.  Defendant recognizes that no such breach by it of any

25  obligation under this Agreement shall give rise to grounds for withdrawal of its guilty plea.

26  Defendant understands that should any such breach of this agreement occur, the government will

27  have the right to use against Defendant before any grand jury, at any trial, hearing or for

28  sentencing purposes, any statements made by its employees and agents, and any information,

PLEA AGREEMENT - 11  
DARIGOLD, INC.

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, Washington 98101-1271  
(206) 553-7970

1  materials, documents or objects provided by Defendant to the government pursuant to this

2  agreement without any limitation.  In this regard, Defendant hereby waives any defense to any

3  charges which it might otherwise have under any statute of limitations, preindictment delay, or the

4  Speedy Trial Act for ninety (90) days following any breach of the agreement, except to the extent

5  that such defenses existed as of the date of the signing of this Agreement.

6      12.    Waiver of Appeal   Defendant, through its authorized representatives is aware that

7  18 U.S.C. § 3742 gives the right to appeal the sentence to be imposed, and that other federal

8  statutes give Defendant the right to appeal other aspects of the conviction.  In consideration of this

9  agreement, Defendant knowingly and voluntarily agrees to waive the following rights:

10      a.    any right conferred by Title 18, United States Code, Section 3742 to appeal the

11            sentence, not including any restitution order imposed; and

12      b.    any right to bring a collateral attack against the conviction and sentence, not

13            including any restitution order imposed, except as it may relate to the effectiveness

14            of legal representation.

15  If Defendant breaches this Plea Agreement at any time by appealing or collaterally

16  attacking (except as to effectiveness of legal representation) the conviction or sentence in any

17  way, the United States may prosecute Defendant for any counts that were dismissed or not

18  charged pursuant to this Plea Agreement.

19      13.    Voluntariness of Plea.  Defendant, through its authorized representatives, agrees

20  that it has entered into this Plea Agreement freely and voluntarily and they have been fully advised

21  by counsel, and that no threats or promises, other than the promises contained in this Plea

22  Agreement, were made to induce Defendant to enter this plea of guilty.

23      14.    Statute of Limitations.  In the event this Agreement is not accepted by the Court for

24  any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of

25  limitations shall be deemed to have been tolled from the date of the Plea Agreement to:  (1) 30

26  days following the date of non-acceptance of the Plea Agreement by the Court; or (2) 30 days

27  following the date on which a breach of the Plea Agreement by Defendant is discovered by the

28  United States Attorney's Office.

PLEA AGREEMENT - 12
DARIGOLD, INC.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

15.   <u>Completeness of Agreement</u>.  The United States and Defendant acknowledge that these terms constitute the entire Agreement between the parties.  This Agreement binds only the United States Attorney's Office for the Western District of Washington.  It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this _15th_ day of _June_ , 2011.


For the UNITED STATES:

JENNY A. DURKAN
United States Attorney for the
Western District of Washington



James D. Oesterle
Assistant United States Attorney


For DARIGOLD, INC.:



Steven Rowe
Authorized Corporate Representative on
Behalf of DARIGOLD, INC.



Robert G. Chadwell
Counsel for DARIGOLD, INC.



PLEA AGREEMENT - 13
DARIGOLD, INC.